1 | SEAN P. O'CONNOR, Cal. Bar No. 155940
2 | TYLER J. CESAR, Cal. Bar No. 288729
ZACHARY J. GOLDA, Cal. Bar No. 327532
3 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 10th Floor
4 | Costa Mesa, California 92626-1993
Telephone:  714.513.5100
5 | Facsimile:  714.513.5130
E-mail:      soconnor@sheppardmullin.com
6 |             tcesar@sheppardmullin.com
             zgolda@sheppardmullin.com

7 | Attorneys for Plaintiff
8 | SG BLOCKS, INC.

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SG BLOCKS, INC., a Delaware corporation, | Case No. 2:20-cv-3432 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1) BREACH OF CONTRACT;** |
| HOLA COMMUNITY PARTNERS, a California corporation; HEART OF LOS ANGELES YOUTH, INC., a California corporation; and CITY OF LOS ANGELES, a public entity, | **(2) DAMAGES FOR CONVERSION;** |
| | **(3) DEFAULT UNDER SECURITY AGREEMENT AND JUDICIAL FORECLOSURE;** |
| Defendants. | **(4) MISAPPROPRIATION OF TRADE SECRETS UNDER CAL. CIV. CODE § 3426;** |
| | **(5) MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836;** |
| | **(6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; AND** |
| | **(7) NEGLIGENCE** |
| | *(DEMAND FOR JURY TRIAL)* |

-1-

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to 28 USC § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars. This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts federal claims under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831, et seq., and the Court has supplemental or pendant jurisdiction over Plaintiff's remaining claims, which form part of the same case or controversy as the federal question claims, pursuant to 28 U.S.C. § 1367.

2. All Defendants reside in this district. The claims arose in this district.

## THE PARTIES

3. Plaintiff SG Blocks, Inc. ("Plaintiff" or "SG Blocks") is a Delaware corporation having its principal place of business in New York, New York.

4. Defendant HOLA Community Partners ("HCP") is a California non-profit corporation having its principal place of business in Los Angeles, California.

5. Defendant Heart of Los Angeles Youth, Inc. ("Heart of LA") is a California non-profit corporation with its principal place of business in Los Angeles, California.

6. Plaintiff is informed and believes that there exists, and at all times herein there existed, a unity of interest and ownership between Heart of LA and HCP, such that any individuality and separateness between the two have ceased, and HCP is the alter ego of Heart of LA in that, among other reasons, HCP is, and at all times herein mentioned was, a mere shell, instrumentality, and conduit through which Heart of LA carried on its business in the corporate name exactly as it had conducted it previous to incorporation, exercising complete control and dominance

-2-

1   of such business to such an extent that any individuality or separateness of HCP and

2   Heart of LA does not, and at all times herein mentioned did not, exist.

3       7.      HCP and Heart of LA are collectively referred to herein as "HOLA."

4       8.      Defendant City of Los Angeles (the "City") is a municipal corporation

5   of the State of California, located in the County of Los Angeles.

6       9.      At all times relevant to this action, each Defendant was the agent,

7   servant, employee, partner, joint venturer, or surety of the other Defendants and was

8   acting within the scope of said agency, employment, partnership, venture, or

9   suretyship with the knowledge and consent or ratification of each of the other

10  Defendants in doing the things alleged herein.

11                          **BACKGROUND**

12  **City of LA Public Works Project - New Arts and Recreation Center**

13              **- Awarded to HOLA without Competitive Bidding**

14      10.     In 2015, the Heart of LA approached the City's Department of

15  Recreation and Parks ("RAP") and "proposed to build a new 33,250 square foot arts

16  and recreation center" in Lafayette Park, in Los Angeles, California (the "Public

17  Works Rec Center"). As proposed, the structure "would be modular, built from

18  single use shipping containers . . . ." The projected cost was $7.2 million. The City

19  approved HOLA's conceptual plan in August 2015.

20      11.     About two years later, on September 14, 2017, the City and the Heart

21  of LA (through its affiliate entity, HCP) entered into a lease, design, construction,

22  operation, and maintenance agreement for the Public Works Rec Center (the "Prime

23  Contract"). The Prime Contract is attached hereto as **Exhibit A**.

24      12.     Although titled "Ground Lease Agreement," the substance of the

25  contract is expressly "FOR THE CONSTRUCTION AND OPERATION OF AN

26  ARTS AND RECREATION CENTER IN LAFAYETTE PARK." Generally, the

27  City agreed to lease its public land (Lafayette Park) to HCP for 50 years (*see* Prime

28  Contract at § 2.1) and in exchange, HCP agreed to pay a nominal fee ($1/year) and

1   to "design and construct[] the Center in conformance with all applicable federal,

2   state, county, and city laws" (*id.* at § 13.1), among other things. The recitals

3   expressly state that the parties entered into the agreement "for the specific purpose

4   of constructing, operating, and maintaining" the Public Works Rec Center. (*Id.* at

5   §§ 1.2.1, 1.2.4.) Further, "[a]ny improvements which have been constructed or

6   erected on the Premises shall, upon termination of [the] Lease, become the property

7   of [the] CITY." (*Id.* at § 16.1.)

8        13.    The City is thus paying for the structure by forgoing or subsidizing the

9   rent for the duration of the lease. For context on the value of the subsidy provided

10   by the City, HCP concurrently subleased the building to its affiliate Heart of LA

11   under the following schedule of annual rent: $0 (2017, Year 1), $55,365 (2018, Year

12   2), $83,045 (2019-2023, Years 3-7), $427,487 (2024, Year 8), $767,596 (2025, Year

13   9), $772,896 (2026-2046, Years 10-29), and $579,672 (2047, Year 30), for a total

14   amount of $18,478,165 over the first 30 years (not adjusted for inflation), pursuant

15   to the sublease agreement attached hereto at **Exhibit B**.

16        14.    Under a traditionally-structured and legally binding public works

17   project, the City would have contracted with the lowest bidder, it would have paid

18   that contractor directly for the construction, and then the City would have leased the

19   building to HOLA and collected rent to recoup the construction costs.

20        15.    On information and belief, there was no competitive bidding for the

21   construction of the Public Works Rec Center, and HCP is not a licensed contractor.

22   Therefore, the Prime Contract is illegal and void. On information and belief, neither

23   HCP, nor Heart of LA, nor their directors, nor the City considered the impact of the

24   public works contracting laws or the contractor's licensing laws at the time the

25   parties entered into the Prime Contract for the construction of the Public Works Rec

26   Center. Neither HCP nor Heart of LA are experienced developers/contractors, so the

27   oversight is not unexpected.

28

**HOLA Subcontracted with SG Blocks**

**for Fabrication and Delivery of Modular Units**

16.     As the Prime Contract was getting final approvals and signatures, HOLA concurrently subcontracted in June 2017 with SG Blocks for SG Blocks to, among other things, fabricate and deliver the modular units to Lafayette Park to be incorporated into the construction of the Public Works Rec Center, and to install them onsite ("SG Blocks Subcontract"). In exchange, HOLA promised to pay $3,831,158.25 for fabrication and delivery and $1,277,052.75 for on-site installation and substantial completion, for a total original contract amount $5,108,211. A copy of the SG Blocks Subcontract is attached hereto as **Exhibit C**.

17.     The parties' mutual intent at the time of entering into the SG Blocks Subcontract was enter into a lawful, valid contract, so that SG Blocks could perform the requested services for HOLA, to the extent permitted by law, without penalty or forfeiture, and so that HOLA could properly compensate SG Blocks for such services performed. Accordingly, to the extent the on-site installation work required SG Blocks to have a contractor's license issued by the California Contractors State License Board, the parties' intent was to sever the on-site installation work into a separate contract from the fabrication and delivery work, which has no such license requirement, or to sever, delete, and/or strike the on-site installation work entirely from the SG Blocks Subcontract. Indeed, the parties expressly stated their mutual intention in Section 12 of the SG Blocks Subcontract:

> All provisions of this Agreement are severable, and any which are deemed invalid or unenforceable shall be ineffective to the extent of such invalidity or unenforceability without invalidating the remaining provisions hereof, and this Agreement shall be enforced and interpreted as if the invalid or unenforceable provisions were not contained herein and any partially valid and enforceable provisions shall be enforced to the extent valid or enforceable.

SMRH:4839-0440-3128.7

## HOLA Failed to Deliver the Site On-Time,
## Causing Increased Fabrication & Delivery Costs

18.     Pursuant to the baseline schedule of the SG Blocks Subcontract, modular fabrication work was to commence in July 2017, with delivery of the containers by November 2, 2017. Installation and onsite work was to take place from November 3, 2017 to January 2018, with HOLA scheduled to move in by March 21, 2018 (after further site work, commissioning, and punchlist).

19.     HOLA subcontracted separately with Balfour Beatty for the site work and to install the building foundations. SG Blocks was not responsible for the site work or for construction of the building foundations – these were the responsibilities of HOLA and its subcontractors.

20.     The timing of the foundation work, however, was critical. Fabrication of the containers was to take 60 days, start to finish. Shipping of the containers was to take an additional 2 weeks. As soon as they were delivered, they were to be hoisted from the delivery trucks onto the foundations. Thus, there was a minimum 74-day duration from start of fabrication to installation on the foundations provided by Balfour Beatty. The foundation work was scheduled to take only 30 days and to finish the day before delivery.

21.     Accordingly, the timing for the start of fabrication had to be coordinated very closely with when HOLA was planning to have the site and the foundations ready to receive the containers. Once fabrication work was started, any delays to the site and foundations would cause substantial delays, impacts, and extra costs for SG Blocks.

22.     Despite HOLA's knowledge of the importance of the timing/coordination of the fabrication, HOLA was unable to deliver the site and foundation, as promised. Ultimately, due to delays caused by HOLA and its subcontractors, SG Blocks was not able to deliver the units until March-April 2018 because of delays caused by HOLA.

SMRH:4839-0440-3128.7

23.     On or about July 14, 2017, SG Blocks received the fabrication deposit from HOLA, and fabrication began on or about July 19, 2017.

24.     The very next day, HOLA notified SG Blocks that site access would be more limited than planned. This affected the cost and time for the cranes used to set the containers.

25.     Ground water and soil contamination also caused delays and increased costs to the fabrication. On or about July 25 and 26, 2017, HOLA notified SG Blocks that the site "groundwater tested high in copper and nickel, which will require treatment." HOLA asked for "recommendations on the finding's impact on costs, design, and construction schedule."

26.     On or about August 11, 2017, Pia Navarro (of HOLA) and Christie Rice (of HOLA) notified SG Blocks by phone that HOLA was anticipating a 38-day delay due to groundwater and soil remediation work (per a call with Ian Miller (of SG Blocks)). On or about August 15, 2017, Mr. Miller explained the potential impacts and costs of the delay. Mr. Miller also outlined the still-unresolved (at that time) crane issue.

27.     To soften the impact of the delays, HOLA agreed to release half of the project retention after the containers were delivered. On or about September 6, 2017, Ms. Rice wrote: "The lenders are ok with releasing half of the retention after draw #5 [(delivery)] and after the lender's construction monitor completes their site visit." Partial release of retention on a construction project upon major milestones is common. SG Blocks relied on HOLA's promise, which HOLA later refused to honor.

28.     As of October 11, 2017, or thereabout, the dewatering activities had not yet begun, and HOLA had not yet provided a revised date for delivery of the containers; Ms. Rice wrote: "HOLA will be able to give a delivery date by Monday (10/23) after the dewatering activities have begun next week."

SMRH:4839-0440-3128.7

29.     From October to December of 2017, HOLA changed the starting delivery date several times.

30.     The pattern then repeated itself in January and February 2018 with regard to HOLA's foundation work. In mid-January, HCP informed SG Blocks that foundations at the site would not be ready until March 5, 2018. Finally, at the end of February 2018, HOLA provided SG Blocks the as-built survey of the foundations, which allowed SG Blocks to finally commit to a shipping date for the containers.

31.     SG Blocks began deliveries of the containers in March 2018, and delivery was complete by April 19, 2018—over 5 months late due to the delays caused by HOLA.

32.     HOLA has accepted all of the containers delivered by SG Blocks. They were inspected and certified by the State of California before shipping to the construction site. HOLA also inspected and approved each unit in the factory before they were shipped. Even after delivery and installation of the units, HOLA did joint media to promote the project.

33.     After disputes arose regarding project delays and payment, HOLA terminated SG Blocks for convenience on February 20, 2019.

34.     On information and belief, HOLA recently (in March or April 2020) completed construction of the Public Works Rec Center. SG Blocks has requested payment for amounts owed but HOLA has indicated, through its statements and conduct, that it will not pay any more amounts to SG Blocks for the completed fabrication and delivery work.

35.     In the interim, SG Blocks had also demanded that HOLA institute a legal hold to prevent spoliation of evidence. In addition to the typical documents and electronically-stored information, the duty to preserve evidence applied to the actual containers and structure of the Public Work Rec Center. HOLA ignored its duty to preserve the work. To SG Blocks' knowledge, HOLA has, over the last year, repaired or replaced all of SG Blocks' work, without any notice or opportunity to

1  inspect the conditions or observe the rework. HOLA's conduct constitutes an

2  egregious spoliation of key evidence, central to the instant dispute.

3  **<u>FIRST CAUSE OF ACTION</u>**

4  **(Breach of Contract Against HCP and Heart of LA)**

5  36.    Plaintiff incorporates by this reference and realleges herein paragraphs

6  1 through 35 of this Complaint.

7  37.    On or about June 1, 2017, HOLA and SG Blocks entered into the

8  written SG Blocks Subcontract. Pursuant to the initial terms of the agreement

9  (without change orders or modifications), HOLA promised to pay $3,831,158.25 to

10  SG Blocks for fabrication and delivery of prefabricated modular units and related

11  materials, and to pay $1,277,052.75 to SG Blocks for on-site installation work, for a

12  total original contract amount of $5,108,211.

13  38.    The SG Blocks Subcontract fails to reflect the true intent of the parties

14  in that it combined into one agreement the fabrication and delivery work (which did

15  not require a contractor's license) and the onsite installation work (which did require

16  a contractor's license). To reflect the true intent of the parties, the SG Blocks

17  Subcontract should instead be split into two separate contracts (one for the

18  fabrication and delivery and the other for onsite installation) or the onsite

19  installation work should be severed, deleted, and/or stricken from the SG Blocks

20  Subcontract entirely.

21  39.    The above-described failure of the SG Blocks Subcontract to reflect the

22  true intent of the parties resulted from a mutual mistake of law by SG Blocks and

23  HOLA in that both parties believed that including the onsite installation work in the

24  same written instrument as the fabrication and delivery work would not have the

25  effect of requiring a contractor's license for the fabrication and delivery work,

26  which otherwise did not require one.

27  40.    In the alternative, the SG Blocks Subcontract is consistent with the

28  parties' mutual intent because they intended to and expressly agreed to sever, delete,

SMRH:4839-0440-3128.7

and/or strike the onsite installation work to the extent that portion of the SG Blocks Subcontract was deemed invalid or unenforceable. Accordingly, under the doctrine of severability and pursuant to the parties' intent, the SG Blocks Subcontract should be interpreted to sever, delete, and/or strike the onsite installation work from the contract.

41.   As reformed or interpreted above, SG Blocks has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the SG Blocks Subcontract, except those conditions, covenants, and promises that SG Blocks was prevented from performing or that were waived or excused.

42.   As reformed or interpreted above, HOLA breached the SG Blocks Subcontract by, among other acts and omissions: (i) failing and/or refusing to pay SG Blocks all amounts due for its fabrication and delivery work; (ii) failing and/or refusing to pay SG Blocks timely; (iii) causing delay, disruption, impacts, price increases, and extra costs to SG Blocks' fabrication and delivery work; (iv) disclosing SG Blocks' confidential information to third parties in violation of the non-disclosure and confidentiality provisions of the SG Blocks Subcontract; (v) failing to comply with the termination provisions of the contract; and (vi) unfairly interfering with SG Blocks' right to receive the benefits of the contract, in violation of HOLA's promise of good faith and fair dealing.

43.   As a result of HOLA's breaches you, SG Blocks has been damaged in an amount to be proven at trial, which is not less than $1,000,000, plus interest at the maximum rate allowed by law or contract.

44.   SG Blocks is also entitled to recover a statutory penalty, calculated as 2% per month for each wrongfully withheld progress payment and/or retention payment, starting from the date such payment became overdue under Business and Professions Code sections 7108.5, Public Contracts Code sections 7107, 10262, 10262.5, and/or Civil Code sections 8800, 8810, until paid.

45.     In addition, SG Blocks is entitled to an award of attorneys' fees and costs, according to proof, pursuant to law and/or Section 4 of the SG Blocks Subcontract.

## SECOND CAUSE OF ACTION

### (Damages for Conversion Against HCP and Heart of LA)

46.     Plaintiff incorporates by this reference and realleges herein paragraphs 1 through 45 of this Complaint.

47.     At all times herein mentioned, SG Blocks was, and still is, the owner and was, and still is, entitled to the possession of the following personal property: the SG Blocks "System," as defined in the SG Blocks Subcontract as the "sustainable building systems and structures [created] through conversion or modification of cargo shipping containers, intermodal container components and prefabricated conventional panel systems" (the "Converted Property").

48.     During the period January 1, 2019 through the present, and at Los Angeles, California, the Converted Property had a value in excess of $4,000,000.

49.     At some point, or over a period of time, during the period from about January 1, 2019 through the present, HOLA, without SG Blocks' consent, took the Converted Property from SG Blocks' possession and converted the same to its own use.

50.     SG Blocks demanded that HOLA return possession of the Converted Property, but HOLA failed and refused, and continues to fail and refuse, to return the Converted Property. At some point, during the period from about January 1, 2019 through the present, further demand on HOLA for the return of the above-mentioned goods became futile because HOLA consumed the Converted Property as part of HOLA's construction of the Public Works Rec Center.

SMRH:4839-0440-3128.7

51.     As a proximate result of HOLA's conversion, SG Blocks has been damaged in an amount according to proof, in excess of $1,000,000, including the time and money expended by SG Blocks in pursuit of the Converted Property.

52.     The aforementioned conduct of HOLA was willful, wanton, malicious, and oppressive, was undertaken with the intent to defraud, and justifies an award of exemplary and punitive damages.

## THIRD CAUSE OF ACTION

### (Default under Security Agreement and Judicial Foreclosure Against HCP and Heart of LA)

53.     Plaintiff incorporates by this reference and realleges herein paragraphs 1 through 45 of this Complaint.

54.     On or about June 1, 2017, HOLA and SG Blocks entered into the written SG Blocks Subcontract, which contains a security agreement, through the express and/or implied terms of the SG Blocks Subcontract and through the statements, conduct, and intent of the parties (the "Security Agreement").

55.     The Security Agreement provided, in relevant part, that SG Blocks agreed to fabricate, sell, and deliver to HOLA certain items, defined in the agreement as sustainable building systems and structures created through conversion or modification of cargo shipping containers, intermodal container components and prefabricated conventional panel systems (the "Collateral"), and HOLA agreed to repay SG Blocks therefor at certain times and places as stated in the agreement. By the agreement, HOLA also gave to SG Blocks a security interest in the Collateral, to which SG Blocks would be entitled to resort to in fulfillment of all obligations secured thereby, as well as expenses reasonably incurred by SG Blocks in any disposition thereof, should HOLA default in any way under the agreement. A financing statement was filed in the office of the California Secretary of State, on or about March 31, 2020, and recorded in the County Recorder of Los Angeles County, on or about April 2, 2020, in connection with perfection of the security interest

SMRH:4839-0440-3128.7

under the agreement, which has been maintained to date by appropriate filings relevant thereto. Attached hereto as **Exhibit D** is a copy of the financing statement that was filed with the California Secretary of State and a copy of the financing statement that was recorded with the County Recorder of Los Angeles.

56.     As reformed or interpreted above, SG Blocks has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Security Agreement, except those conditions, covenants, and promises that SG Blocks was prevented from performing or that were waived or excused.

57.     As reformed or interpreted above, HOLA has defaulted on the Security Agreement by, among other acts and omissions: (i) failing and/or refusing to pay SG Blocks all amounts due for its fabrication and delivery work; and (ii) failing and/or refusing to pay SG Blocks timely.

58.     As a result of said default, SG Blocks has been damaged in an amount to be proven at trial, which is not less than $1,000,000, plus interest at the maximum rate allowed by law or contract.

59.     HOLA has remained to the present time in possession of the Collateral subject to SG Blocks' security interest. As a result of HOLA's default, SG Blocks is entitled to enforce this security interest by judicial foreclosure of all of HOLA's rights in the property through public sale thereof by the proper judicial officer.

## <u>FOURTH CAUSE OF ACTION</u>

### (Misappropriation of Trade Secrets under Cal. Civ. Code § 3426
### Against HCP and Heart of LA)

60.     Plaintiff incorporates by this reference and realleges herein paragraphs 1 through 59 of this Complaint.

61.     This cause of action is brought under the California Uniform Trade Secrets Act ("CUTSA"), California Civil Code sections 3426 - 3426.11.

62.     At all relevant times hereto, SG Blocks was in possession of a trade secrets, which consisted of methods, techniques, and processes for the conversion or modification of cargo shipping containers and intermodal shipping containers into modular building components, including devices, methods, techniques, and/or processes for installing those modular building components onto a building foundation and connecting those modular building components together or to conventional building systems ("Trade Secrets").

63.     SG Blocks' Trade Secrets had economic value in that it reduced considerably the time and costs for the design, fabrication, delivery, installation, and completion of building commercial and residential structures, as compared to traditional construction methods. SG Blocks made reasonable efforts to insure that the Trade Secrets remained secret by disclosing it only to employees who were responsible for carrying out the secret methods, techniques, and processes and by ensuring that all third parties who received information regarding the Trade Secrets agreed to keep that information strictly confidential.

64.     At some point, or over a period of time, during the period from about January 1, 2019 through the present, HOLA misappropriated the above-described Trade Secrets of SG Blocks by disclosing and using the Trade Secrets, without SG Blocks' consent, to design, construct, modify, market, and promote the Public Works Rec Center. At the time of HOLA's improper disclosure and use of the Trade Secrets, HOLA was under a contractual duty to maintain its secrecy and/or limit its use and disclosure.

65.     As a proximate result of HOLA's misappropriation, SG Blocks has suffered actual damages and HOLA was unjustly enriched through the completion and use of the Public Works Rec Center. Or in the alternative, because neither SG Blocks' actual damages nor HOLA's unjust enrichment are subject to proof, SG Blocks is entitled to a reasonable royalty, to be proven at trial, including for example

-14-

1  and without limitation a percentage of the rent revenue HCP receives from Heart of

2  LA under the sublease agreement described above.

3       66.    SG Blocks is informed and believes and thereon alleges that the

4  aforementioned acts of HOLA were willful and malicious in that HOLA

5  misappropriated SG Blocks' Trade Secrets with the deliberate intent to injure

6  SG Blocks' business and improve its own and in total disregard of the non-

7  disclosure and confidentiality provisions of the parties' SG Blocks Subcontract, and

8  in total disregard of SG Blocks' notices, warnings, and demands that HOLA not

9  wrongfully disclose and/or use SG Blocks' Trade Secrets. Plaintiff is therefore

10  entitled to punitive damages. Plaintiff is also entitled to reasonable attorney's fees.

11  **FIFTH CAUSE OF ACTION**

12  **(Misappropriation of Trade Secrets under 18 U.S.C. § 1836**

13  **Against HCP and Heart of LA)**

14       67.    Plaintiff incorporates by this reference and realleges herein paragraphs

15  1 through 66 of this Complaint.

16       68.    This cause of action is brought under the federal Defend Trade Secrets

17  Act of 2016 ("DTSA"), 18 U.S.C. § 1836.

18       69.    At all relevant times hereto, SG Blocks was in possession of a trade

19  secrets, which consisted of methods, techniques, and processes for the conversion or

20  modification of cargo shipping containers and intermodal shipping containers into

21  modular building components, including devices, methods, techniques, and/or

22  processes for installing those modular building components onto a building

23  foundation and connecting those modular building components together or to

24  conventional building systems ("Trade Secrets").

25       70.    SG Blocks' Trade Secrets had economic value in that it reduced

26  considerably the time and costs for the design, fabrication, delivery, installation, and

27  completion of building commercial and residential structures, as compared to

28  traditional construction methods. SG Blocks made reasonable efforts to insure that

-15-

SMRH:4839-0440-3128.7

the Trade Secrets remained secret by disclosing it only to employees who were responsible for carrying out the secret methods, techniques, and processes and by ensuring that all third parties who received information regarding the Trade Secrets agreed to keep that information strictly confidential.

71.   At some point, or over a period of time, during the period from about January 1, 2019 through the present, HOLA, misappropriated the above-described Trade Secrets of SG Blocks by disclosing and using the Trade Secrets, without SG Blocks' consent, to design, construct, modify, market, and promote the Public Works Rec Center. At the time of HOLA's improper disclosure and use of the Trade Secrets, HOLA was under a contractual duty to maintain its secrecy and/or limit its use and disclosure.

72.   As a proximate result of HOLA's misappropriation, SG Blocks has suffered actual damages and HOLA was unjustly enriched through the completion and use of the Public Works Rec Center. Or in the alternative, because neither SG Blocks' actual damages nor HOLA's unjust enrichment are subject to proof, SG Blocks is entitled to a reasonable royalty, to be proven at trial, including for example and without limitation a percentage of the rent revenue HCP receives from Heart of LA under the sublease agreement described above.

73.   SG Blocks is informed and believes and thereon alleges that the aforementioned acts of HOLA were willful and malicious in that HOLA misappropriated SG Blocks' Trade Secrets with the deliberate intent to injure SG Blocks' business and improve its own and in total disregard of the non-disclosure and confidentiality provisions of the parties' SG Blocks Subcontract, and in total disregard of SG Blocks' notices, warnings, and demands that HOLA not wrongfully disclose and/or use SG Blocks' Trade Secrets. Plaintiff is therefore entitled to punitive damages. Plaintiff is also entitled to reasonable attorney's fees.

## SIXTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations

### Against HCP and Heart of LA)

74.     Plaintiff incorporates by this reference and realleges herein paragraphs 1 through 73 of this Complaint.

75.     On or about June 29, 2016, SG Blocks and EDI International, PC ("EDI") entered into an agreement (the "EDI Consulting Agreement") for EDI to provide, for a fee, certain architectural and design services, including design schematics, draft construction documents, and construction administration for the design and construction of the Public Works Rec Center.

76.     From about June 2017 and during the performance of the SG Blocks Subcontract, SG Blocks entered into multiple agreements with sub-tier subcontractors and suppliers to furnish labor, materials, equipment, and/or supplies for the Public Works Rec Center (collectively, the "Sub-Tier Subcontracts").

77.     HOLA intended to disrupt the performance of the EDI Consulting Agreement and the Sub-Tier Subcontracts.

78.     Because HOLA has shut SG Blocks out of the project site and refused to provide any details about its construction activities at the site, SG Blocks is not able to identify specifically which Sub-Tier Subcontracts HOLA has actually interfered with or the extent of the damage caused by such interference.

79.     HOLA, however, has prevented performance of the EDI Consulting Agreement and certain, yet-to-be-determined, Sub-Tier Subcontracts and/or made performance more expensive and/or difficult by, among other ways, communicating with, negotiating with, and contracting with EDI and certain sub-tier subcontractors and suppliers without SG Blocks' knowledge or consent, and to the detriment of SG Blocks.

-17-

80.  Plaintiff was harmed by HOLA's actions in preventing and/or disrupting the EDI Consulting Agreement and those certain, yet-to-be-determined, Sub-Tier Subcontracts.

81.  As a direct and proximate consequence of HOLA's actions, SG Blocks and EDI were unable to complete performance of the EDI Consulting Agreement, and thus SG Blocks has been damaged in an amount to be proved at trial that is in excess of $25,000, including attorneys' fees incurred to protect its interests with regard to EDI and the Public Works Rec Center.

82.  As a direct and proximate consequence of HOLA's actions, SG Blocks and the above-mentioned sub-tier subcontractors and suppliers were unable to complete performance of those certain, yet-to-be-determined, Sub-Tier Subcontracts, and thus SG Blocks has been damaged in an amount to be proved at trial that is in excess of $25,000, including attorneys' fees incurred to protect its interests with regard to said sub-tier subcontractors and suppliers and the Public Works Rec Center.

83.  HOLA's wrongful actions were willful, wanton, and malicious within the meaning of Cal. Civ. Code § 3294, entitling SG Blocks to punitive or exemplary damages in an amount appropriate to punish HOLA and deter it from engaging in similar misconduct in the future.

## SEVENTH CAUSE OF ACTION

### (Negligence Against HCP, Heart of LA, and the City)

84.  Plaintiff incorporates by this reference and realleges herein paragraphs 1 through 83 of this Complaint.

85.  On or about September 14, 2017, the City and HCP entered into the Prime Contract, which is, among other things, a public works contract for the design, construction, and improvement of land, a building, and other public improvements involving the installation of site work, foundation work, and

-18-

construction of a building structure on real property owned by the City, and located in Los Angeles, California.

86.     Plaintiff is informed and believes that the Prime Contract involved an expenditure by the City in excess of $25,000.

87.     On or about June 1, 2017, HOLA and SG Blocks entered into the SG Blocks Subcontract described above.

88.     SG Blocks has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the SG Blocks Subcontract, except those conditions, covenants, and promises that SG Blocks was prevented from performing or that were waived or excused.

89.     SG Blocks is informed and believes that the SG Blocks Subcontract was for the work covered by the Prime Contract, in whole or in part.

90.     Pursuant to Civil Code section 9550 and under *Electrical Electronic Control, Inc. v. Los Angeles Unified School District*, 126 Cal. App. 4th 601, 611-612 (2005), the City owed a duty to all subcontractors (including SG Blocks) performing work covered by the Prime Contract to require HOLA to provide a payment bond "before commencement of work," and HOLA owed a duty to actually provide the payment bond to the City.

91.     The City negligently failed to require HOLA to provide the payment bond required by Civil Code section 9550, and HOLA negligently failed to obtain and provide the payment bond to the City, so as to deprive SG Blocks of the ability to seek recovery from the payment bond under the circumstances alleged above, namely, that SG Blocks has been unable to recover all amounts due under the SG Blocks Subcontract.

92.     As a direct and proximate result of the negligence of the City, SG Blocks has been damaged in an amount to be proven at trial, which is not less than $1,000,000, plus interest at the maximum rate allowed by law or contract.

93.     On April 9, 2020, SG Blocks submitted a claim to the City, in accordance with the Government Claims Act (formerly known as the California Tort Claims Act), Government Code sections 810 et seq. The claim notified the City of the facts and circumstances alleged in this seventh cause of action, including SG Blocks' claim for unpaid contract amounts. SG Blocks has not yet received any response from the City regarding the claim.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff SG Blocks, Inc. prays for judgment against Defendants HOLA Community Partners, Heart of Los Angeles Youth, Inc., and the City of Los Angeles, as follows:

**On the First Cause of Action for Breach of Contract**

1.     For the reformation of the written SG Blocks Subcontract to reflect the true intent of the parties, as follows: (a) the SG Blocks Subcontract should be split into two separate contracts (one for the fabrication and delivery work and the other for onsite installation work); or in the alternative, (b) the onsite installation work should be severed, deleted, and/or stricken for the SG Blocks Subcontract entirely;

2.     For damages according to proof at trial, in an amount equal to or in excess of $1,000,000;

3.     For interest at the maximum rate allowed by law or contract;

4.     For statutory penalties under Business and Professions Code sections 7108.5, Public Contracts Code sections 7107, 10262, 10262.5, and/or Civil Code sections 8800, 8810, in an amount to be proven at trial;

5.     For attorneys' fees incurred herein;

6.     For costs of suit incurred herein; and

7.     For such other and further relief as the Court may deem just and proper.

SMRH:4839-0440-3128.7

**On the Second Cause of Action for Conversion**

8.    For damages according to proof at trial, in an amount equal to or in excess of $1,000,000;

9.    For interest at the maximum rate allowed by law or contract;

10.   For damages for time and money properly expended in pursuit of the Converted Property, according to proof at trial, in an amount equal to or in excess of $10,000;

11.   For punitive and exemplary damages;

12.   For costs of suit incurred herein; and

13.   For such other and further relief as the Court may deem just and proper.

**On the Third Cause of Action for Default under Security Agreement and Judicial Foreclosure**

14.   For damages according to proof at trial, in an amount equal to or in excess of $1,000,000;

15.   For interest at the maximum rate allowed by law or contract;

16.   For an order directing public sale of the property herein described to foreclose all of HOLA's rights therein and to apply the proceeds, in the following order:

a.    To the costs of taking, holding, and selling the property and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party in doing so;

b.    To the costs of suit herein, as may be awarded by the court;

c.    To the satisfaction of damages and interest thereon under the agreement;

d.    To the satisfaction of obligations secured by any subordinate security interest in, or other subordinate lien on, the Collateral, and to the satisfaction of any subordinate attachment lien or execution lien

1    pursuant to Code Civ. Proc. § 701.040(b) if authenticated demand

2    therefor or notice of the levy of attachment or execution is received

3    before distribution of the proceeds is completed; and

4    e.    To HOLA as to any surplus thereafter;

5    17.    For attorneys' fees incurred herein;

6    18.    For costs of suit incurred herein; and

7    19.    For such other and further relief as the Court may deem just and proper.

8    **On the Fourth Cause of Action Misappropriation of Trade Secrets under Cal.**

9    **Civ. Code § 3426**

10    20.    For damages and the amount necessary to prevent the unjust

11    enrichment of HOLA, according to proof at trial, in an amount equal to

12    or in excess of $100,000; or in the alternative, for reasonable royalties,

13    according to proof at trial;

14    21.    For attorneys' fees incurred herein;

15    22.    For punitive and exemplary damages;

16    23.    For costs of suit incurred herein; and

17    24.    For such other and further relief as the Court may deem just and proper.

18    **On the Fifth Cause of Action Misappropriation of Trade Secrets under**

19    **18 U.S.C. § 1836**

20    25.    For damages and the amount necessary to prevent the unjust

21    enrichment of HOLA, according to proof at trial, in an amount equal to

22    or in excess of $100,000; or in the alternative, for reasonable royalties,

23    according to proof at trial;

24    26.    For attorneys' fees incurred herein;

25    27.    For punitive and exemplary damages;

26    28.    For costs of suit incurred herein; and

27    29.    For such other and further relief as the Court may deem just and proper.

28

SMRH:4839-0440-3128.7

**On the Sixth Cause of Action for Intentional Interference with Contractual Relations**

30. For damages according to proof at trial, in an amount equal to or in excess of $50,000, including costs and attorneys' fees necessarily incurred in protecting SG Blocks' interests against EDI and/or the subject sub-tier subcontractors and/or suppliers;

31. For interest at the maximum rate allowed by law or contract;

32. For punitive and exemplary damages;

33. For costs of suit incurred herein; and

34. For such other and further relief as the Court may deem just and proper.

**On the Seventh Cause of Action for Negligence**

35. For damages according to proof at trial, in an amount equal to or in excess of $1,000,000;

36. For interest at the maximum rate allowed by law or contract;

37. For statutory penalties under Business and Professions Code sections 7108.5, Public Contracts Code sections 7107, 10262, 10262.5, and/or Civil Code sections 8800, 8810, in an amount to be proven at trial;

38. For costs of suit incurred herein; and

39. For such other and further relief as the Court may deem just and proper.

Dated:  April 13, 2020

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     _____*/s/ Sean P. O'Connor*_____
SEAN P. O'CONNOR
TYLER J. CESAR
ZACHARY J. GOLDA

Attorneys for Plaintiff
SG Blocks, Inc.

-23-

SMRH:4839-0440-3128.7

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands trial by jury.

3

Dated:  April 13, 2020

4

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

5

6

By     _____

            */s/ Sean P. O'Connor*

7

SEAN P. O'CONNOR

TYLER J. CESAR

8

ZACHARY J. GOLDA

9

10

Attorneys for Plaintiff

SG Blocks, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4839-0440-3128.7