O

# United States District Court
# Central District of California

| | |
|---|---|
| SG BLOCKS, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>HOLA COMMUNITY PARTNERS et al.,<br><br>   Defendants.<br><br>HOLA COMMUNITY PARTNERS,<br><br>   Consolidated Plaintiff,<br><br>  v.<br><br>SG BLOCKS, INC. et al.,<br><br>   Consolidated Defendant and<br>   Third-Party Plaintiff,<br><br>  v.<br><br>TETON BUILDINGS, LLC et al.,<br><br>   Third-Party Defendants. | Lead Case №:<br> 2:20-cv-03432-ODW (RAOx)<br><br>Member Case №:<br> 2:20-cv-04386-ODW (RAOx)<br><br>**ORDER DENYING MOTIONS OF SG BLOCKS, AS THIRD-PARTY PLAINTIFF, FOR DEFAULT JUDGMENT AGAINST AVESI AND SADDLEBACK** |

## I.  INTRODUCTION

This is a consolidated construction dispute involving HOLA Community Partners ("HOLA") and Heart of Los Angeles Youth, Inc. (together, "HOLA Parties"),

the proponents of a construction project; SG Blocks, Inc., a contractor for the project; and several subcontractors. SG Blocks filed a Complaint against the HOLA Parties and the City of Los Angeles. (SG Blocks Compl., ECF No. 1.)[1] HOLA filed a Complaint and then a First Amended Complaint against SG Blocks and three subcontractors. (HOLA First Am. Consol. Compl. ("FACC"), ECF No. 31.) Then, SG Blocks, as Third-Party Plaintiff, filed a Third-Party Complaint and then a First Amended Third-Party Complaint against the same three subcontractors and several additional subcontractors. (SG Blocks First Am. Third-Party Complaint ("FATPC"), ECF No. 79.) The two cases have been consolidated, with SG Blocks as Plaintiff in the lead case and HOLA as Plaintiff in the member case.

The parties reached a global settlement of the case, resolving all claims against all parties except the two who failed to appear in this matter—Avesi Construction, LLC and Saddleback Roofing, Inc. (Stip. Dismiss, ECF No. 169; Order Granting Stip. Dismiss, ECF No 170.) SG Blocks, as Third-Party Plaintiff, now moves for default judgment against Avesi and Saddleback as Third-Party Defendants. (Mot. Default J. Avesi ("Avesi Motion" or "Avesi Mot."), ECF No. 171-1; Mot. Default J. Saddleback ("Saddleback Motion" or "Saddleback Mot."), ECF No. 172-1.) The Court carefully considered the papers filed in connection with the Motions and deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **DENIES** SG Blocks' Motions.

## II. BACKGROUND

HOLA is a non-profit organization that provides at-risk youth with free academic, art, and athletic programs. It operates an arts and recreation center in Lafayette Park in Los Angeles, California. The present dispute concerns construction of the center, referred to herein as the "Project."

---

[1] ECF numbers in this Order refer to those in the lead case.

### A. Construction of the Project

In September 2017, the HOLA Parties entered into an agreement with the City of Los Angeles under which the HOLA Parties would lease the land and construct the Project. (Compl. ¶ 11.) HOLA then entered into a contract with SG Blocks to perform construction on the Project, including by fabricating, delivering, and installing modular workspace units. (*Id.* ¶ 16.) In turn, SG Blocks hired several subcontractors to assist with construction on the Project, including Avesi and Saddleback. (FATPC ¶¶ 22–34.) SG Blocks subcontracted Avesi to install the modular units at the Project, (*id.* ¶ 23), and it subcontracted Saddleback to provide roofing for the Project, (*id.* ¶ 32, Ex. J ("Saddleback Proposal")).

According to HOLA, SG Blocks and its subcontractors provided incomplete design plans, delivered dangerously defective building materials, failed to meet deadlines, and performed defective construction work. (*See* FACC ¶ 9.) As is relevant here, HOLA alleges that the inferior work resulted in "[s]tructural defects: defects in walkway/hallway structures (all levels), ensemble room structure, and roof framing structure/s; defective construction assembly of the container stacking attachments and associated assemblies," and defects with the "[i]nterior walls: defective construction of the wall framing includ[ing] improper attachments, missing structural hardware, and improper construction of firewalls." (*Id.* ¶ 9(B), (C).) HOLA also alleges that the inferior work resulted in "[r]oofing system defects: roof system installed improperly at the perimeter of the building; perimeter gutter system not properly integrated with roof membrane; penetrations throughout the roof system leak causing damage to the building interior; sheet metal flashing and counter flashing improperly installed." (*Id.* ¶ 9(G).)

HOLA eventually terminated its agreement with SG Blocks and hired a nonparty to complete construction of the Project at additional expense. (Compl. ¶ 33; *see* FACC ¶¶ 10(D), 38(B).)

**B.	Pleadings and Proceedings**

On April 13, 2020, SG Blocks filed this action against the HOLA Parties, alleging that, among other things, HOLA failed to timely pay SG Blocks. (Compl. ¶ 42.) On April 20, 2020, HOLA filed suit against SG Blocks in Los Angeles Superior Court, claiming SG Blocks' construction on the Project was structurally defective and incomplete. Compl. ¶ 8, *HOLA Cmty. Partners v. SG Blocks, Inc. et al.*, No. 2:20-cv-04386-ODW (RAOx) (C.D. Cal filed May 14, 2020) ("*HOLA II*"), ECF No. 1-3. After SG Blocks removed *HOLA II* to federal court, the Court consolidated the two cases. (Min. Order Consolidate, ECF No. 26); Min. Order Consolidate, *HOLA II*, ECF No. 16.

In its First Amended Consolidated Complaint, HOLA asserts claims against SG Blocks, Avesi, and others for (1) negligence; (2) strict products liability; (3) breach of contract; (4) breach of express warranty; (5) violation of California Business & Professions Code § 7031(b); and (6) violation of California Business & Professions Code § 17200. (FACC ¶¶ 8–52.) HOLA asserts all these claims against SG Blocks. (*Id.* ¶¶ 8–18, 33–52.)

On November 17, 2020, HOLA dismissed all its claims against Avesi and certain other parties without prejudice. (Min. Order Dismiss, ECF No. 48.)

On July 23, 2021, SG Blocks filed its First Amended Third-Party Complaint, asserting claims against the Third-Party Defendants—including Avesi and Saddleback—for (1) contractual indemnity; (2) equitable indemnity; and (3) contribution. (FATPC ¶¶ 38–56.) By way of these claims, SG Blocks demands that the Third-Party Defendants indemnify it in the event it is found liable to HOLA for the claims HOLA alleged in the First Amended Consolidated Complaint. (*Id.* ¶ 45.) SG Blocks asserts all three of these claims against Avesi, and it asserts the second and third claims against Saddleback. (*Id.*)

One of the Third-Party Defendants, the McIntyre Company, moved for partial summary judgment on SG Blocks' express indemnity claim against it, arguing that

California Business and Professions Code section 7031(a) prevented SG Blocks, as an unlicensed contractor, from obtaining a judgment of express indemnity against McIntyre. (Mot. Partial Summ. J., ECF No. 153.) The Court granted the Motion and dismissed the express indemnity claim against McIntyre. (Order Granting Partial Summ. J. 8, ECF No. 166 ("[B]ecause SG Blocks is unlicensed, section 7031(a) renders McIntyre's express indemnity obligation to SG Blocks unenforceable.").)

In time, the parties reached a global settlement of the case under which SG Blocks agreed to pay HOLA $1 million. (Notice of Settlement, ECF No. 167; (Decl. John C. Goodman ISO Avesi Mot. ("Avesi Goodman Decl.") ¶ 3, ECF No. 171-3.) Pursuant to the settling parties' joint stipulation, the Court dismissed the entire consolidated action against all parties except Avesi and Saddleback. (Stip. Dismiss; Order Granting Stip. Dismiss.) After this dismissal, the only claims that remain are SG Blocks' indemnity and contribution claims against Avesi and Saddleback. (*See* Order Reinstating SG Blocks, ECF No. 174.)

**C.    Defaults of Avesi and Saddleback; Default Judgment Motions**

On August 23, 2021, several months before the parties reached a settlement, SG Blocks served Avesi with the First Amended Third-Party Complaint and HOLA's First Amended Consolidated Complaint. (Proof Service Avesi, ECF No. 93.) According to counsel for SG Blocks, Avesi[2] has made "no attempt to appear in this action or to contact counsel for [SG Blocks] or anyone" else regarding the matter. (Avesi Goodman Decl. ¶ 2.) On February 9, 2022, the Clerk entered Avesi's default. (Avesi Default, ECF No. 134.)

Also on August 23, 2021, SG Blocks served Saddleback with the First Amended Third-Party Complaint and HOLA's First Amended Consolidated

---

[2] In more than one instance, counsel failed to ensure that counsel's declaration for the Avesi Motion referenced Avesi only (and not Saddleback), and vice versa. (*See, e.g.*, Decl. John C. Goodman ISO Avesi Mot. ¶ 2, ECF No. 171-3 (stating, in declaration regarding default judgment against Avesi, that *Saddleback* made no attempt to appear in the action).) For the purpose of this Motion, the Court will assume that these errors were scrivener's errors. The Court expects future motions and supporting evidence to be free of such errors.

Complaint. (Proof Service Saddleback, ECF No. 106.) At first, SG Blocks did not hear from Saddleback. (Decl. John C. Goodman ISO Saddleback Mot. ("Saddleback Goodman Decl.") ¶¶ 2–3, ECF No. 172-3.) Eventually, on October 27, 2022, an insurance adjuster contacted SG Blocks' counsel via email regarding Saddleback. (*Id.* ¶ 2.) SG Blocks replied, informing the insurance adjuster that SG Blocks intended to move for default judgment against its insured, Saddleback. (*Id.*) The adjuster did not respond to this reply. (*Id.*) On February 9, 2022, the Clerk entered Saddleback's default. (Saddleback Default, ECF No. 135.)

SG Blocks, as Third-Party Plaintiff, now moves for default judgment against Avesi and Saddleback as Third-Party Defendants. SG Blocks asks the Court to enter judgment in the amount of $1 million jointly and severally against Avesi and Saddleback. SG Blocks also asks the Court to enter additional several (that is, individual) judgments against Avesi and Saddleback in the amounts of $112,190.66 and $76,380.09, respectively. (Proposed Default Js., ECF Nos. 171-4, 172-4.) SG Blocks served a copy of the Saddleback Motion on the insurance adjuster at both the adjuster's email address and the physical address listed on the adjuster's emails. (Saddleback Goodman Decl. ¶ 2.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rules 54(c) and 55 and Central District Civil Local Rules 55-1 and 55-2.

However, even if these procedural requirements are satisfied, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true" except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). In entering default judgment, the court need not make detailed findings of fact, except as to damages. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990).

## IV. DISCUSSION

Both Motions suffer from deficiencies related to (1) the procedural requirements, (2) the second and third so-called *Eitel* factors, and (3) proof of damages. The Court details these deficiencies below and provides SG Blocks with an opportunity to amend its Motions to cure the deficiencies.

### A. Procedural Requirements

Both Motions fail to meet some of the requirements of Central District Local Rule 55-1. As set forth in Central District Local Rule 55-1, parties moving for default judgment must submit a declaration (not merely an argument in a brief) establishing: (1) when and against which party default was entered; (2) the pleading to which default was entered; (3) whether the defaulting party is a minor or incompetent person; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice, if required under Rule 55(b)(2). In turn, Rule 55(b)(2) requires written notice on the defaulting party "[i]f the party against whom a default judgment is sought has appeared personally or by a representative." Fed. R. Civ. P. 55(b)(2).

As Avesi and Saddleback are entities, not natural persons, the third and the fourth of the above requirements do not apply here, but the remaining requirements are crucial. SG Blocks' declarations of counsel do not address these requirements. (*See generally* Avesi Goodman Decl., Saddleback Goodman Decl.) The Court may properly deny the Motions on this basis.

## B. *Eitel* Factors

In exercising discretion to enter default judgment, courts consider the "*Eitel* factors": (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).

In considering whether the second and third factors—the merits of SG Blocks' claims and the sufficiency of SG Blocks' First Amended Third Party Complaint—support default judgment, the Court observes three material concerns: SG Blocks' failure to (1) address the effect of SG Blocks' unlicensed status in light of the Court's prior finding regarding unlicensed contractors asserting contractual indemnity claims, (2) meaningfully engage with the elements of any of its claims, and (3) demonstrate that part of the judgment should be entered in joint and several fashion.

### 1. Failure to Address Effect of SG Blocks' Unlicensed Status on Availability of Default Judgment

Previously in this matter, now-dismissed Third-Party Defendant McIntyre moved for partial summary judgment in order to obtain this Court's ruling on a discrete legal issue. (*See* Mot. Partial Summ. J.) That issue was whether California Business and Professions Code section 7031(a) bars unlicensed contractors from suing for express indemnity, that is, for indemnity expressly set forth in a written contract. The Court answered this question in the affirmative. (Order Granting Partial Summ. J. 8–11.) SG Blocks was unlicensed at the time it worked on the Project, and accordingly, McIntyre's express indemnity obligation to SG Blocks was unenforceable. (*Id.*)

SG Blocks asserts its express (or contractual) indemnity claim against Avesi. (*See* FATPC ¶¶ 39–40 (quoting Avesi Subcontract and alleging that "[u]nder the Avesi Subcontract, Avesi is obligated to indemnify, defend, and hold harmless [SG Blocks] from the claims asserted by [HOLA] in its [First Amended Consolidated Complaint]").) Moreover, nothing in the record suggests SG Blocks has dismissed its express indemnity claim against Avesi. Yet, SG Blocks does not address the effect of the Court's summary judgment order on this claim. (*See generally* Avesi Mot.)

The "law of the case" doctrine applies whenever a court is asked to revisit a decision on a rule of law previously made by that same court or a higher court in the same case. *Chinatown Neighborhood Ass'n v. Harris*, 33 F. Supp. 3d 1085, 1093 (N.D. Cal. 2014). The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618 (1983). The law of the case doctrine "also serves to maintain consistency." *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir. 1997) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478 (1981)), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012). The doctrine "is not a limitation on a tribunal's power, but rather a guide to discretion." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

Applying the law of the case doctrine here, it appears that SG Blocks' express/contractual indemnity claim against Avesi is barred by this Court's prior determination—namely, that Business and Professions Code section 7031(a) renders SG Blocks' express indemnity claims unenforceable. The Court sees no reason why its determination regarding indemnity by McIntyre should not also apply to SG Blocks' demand for indemnity by Avesi. In amending its Motion for default judgment against Avesi, SG Blocks shall either stipulate to dismissal of its contractual indemnity claim against Avesi or shall demonstrate why the Court's prior legal

determination regarding section 7031(a) does not apply. Failure to do so will be deemed a concession to dismissal of the contractual indemnity claim.

### 2. Failure to Engage with Elements of Claims

SG Blocks' remaining claims against Avesi and Saddleback are for equitable indemnity and contribution. "Equitable indemnity . . . is premised on a joint legal obligation to another for damages . . . ." *C.W. Howe Partners Inc. v. Mooradian*, 43 Cal. App. 5th 688, 700 (2019) (internal quotation marks omitted); *see Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1159 (2009) ("[T]here can be no indemnity without liability."). Claims for equitable indemnity are "subject to allocation of fault principles and comparative equitable apportionment of loss." *Mooradian*, 43 Cal. App. 5th at 700. Equitable indemnity "requires no contractual relationship," *Prince*, 45 Cal. 4th at 1158, and "is a matter of fairness," *Smoketree-Lake Murray, Ltd. v. Mills Concrete Constr. Co.*, 234 Cal. App. 3d 1724, 1736 (1991).

A claim for contribution arises when "a party to a joint, or joint and several obligation, who satisfies more than [their] share of the claim against all, may require a proportionate contribution from all the parties joined with [them]." Cal. Civ. Code § 1432; *see also Morgan Creek Residential v. Kemp*, 153 Cal. App. 4th 675, 684 (2007) (describing a claim for contribution as accruing "[i]n situations where two or more parties are jointly liable on an obligation").

In arguing that its claims are sufficiently pleaded and meritorious, SG Blocks asserts that its "substantive claims appear facially meritorious[,] and the [Third-Party Complaint], combined with the allegations brought by HOLA[,] are sufficient to support a judgment." (Avesi Mot. 5; Saddleback Mot. 6.) However, in making this argument, SG Blocks does not actually engage with any of the elements of either of its claims, nor does it cite to any paragraphs in the FACC or the FATPC that contain facts which, if true, would make a prima facie case for either claim. Similarly, SG Blocks asserts that it "has stated relevant authority pursuant to which the court may

provide relief," (Avesi Mot. 5; Saddleback Mot. 6), but the Court reviewed SG Blocks' Motions and found no such authority.

To obtain a judgment, SG Blocks must point to allegations, and may supplement those allegations with evidence, regarding what actually happened at the Project—the work Avesi and Saddleback each performed, how the work was deficient, how HOLA remedied those specific deficiencies, and what it cost HOLA to do so. This is required in order to show the Court that Avesi or Saddleback should be required to pay some or all of SG Blocks' $1 million settlement payment to HOLA. The allegations must be sufficient to place Avesi and Saddleback on notice of the nature of the potential liability, and the allegations and additional evidence, taken together, must provide a sufficient demonstration of the second and third *Eitel* factors.

3.  *Failure to Support Request for Joint and Several Liability*

The next concern is that SG Blocks fails to support its request for a judgment of liability that is joint and several. SG Blocks proposes a default judgment imposing, in part, $1 million in joint and several liability on Avesi and Saddleback.

"A creature of tort law, joint and several liability 'applies when there has been a judgment against multiple defendants.'" *Honeycutt v. United States*, 581 U.S. 443, 447 (2017) (quoting *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994)). "If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount." *Id.* at 447–48.

Here, SG Blocks' Motions are devoid of any mention of joint and several liability. SG Blocks simply argues in one Motion that Avesi caused over $1 million in completion cost damages plus general conditions and should therefore indemnify SG Blocks for the $1 million it paid HOLA. (Avesi Mot. 4.) It argues the same thing in the other Motion with respect to Saddleback. (Saddleback Mot. 4.) Without additional arguments or evidence demonstrating Avesi and Saddleback *jointly caused the same harm*, it is not clear that there is a basis for imposing joint and several

liability under these facts. In amending its Motions, SG Blocks shall address this issue, including by providing legal authority demonstrating that joint and several liability is appropriate under these facts, or by proposing an alternate form of liability.

The Court will provide SG Blocks an opportunity to remedy the three foregoing concerns. The Court defers analysis of the remaining *Eitel* factors, to be determined upon SG Blocks' anticipated amended motion.

**C.      Proof of Damages**

As allegations related to damages are not deemed true upon default, *TeleVideo Sys.*, 826 F.2d at 917–18, a party seeking default judgment must prove their damages, *Rubicon Global Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, 226 F. Supp. 3d 1141, 1148 (D. Or. Dec. 30, 2016). "[D]istrict courts within the Ninth Circuit have required plaintiffs to prove . . . compensatory damages with 'reasonable certainty' even in situations of default." *Id.* at 1149.

Here, the Court has three concerns with SG Blocks' proof of damages. First, SG Blocks' claims for "General Conditions" are conclusory and unsupported. Second, there are foundational evidentiary concerns with the evidence SG Blocks submits in support of damages. Third, there are problems with the methodology SG Blocks' expert used to reach his conclusions.

*1.      "General Conditions" Not Supported or Itemized*

SG Blocks' expert, Paul Kushner, determined that a fair allocation of the damages alleged by HOLA for which Avesi is responsible is $1,343,627.00. (Avesi Mot. 4; Decl. Paul V. Kushner ISO Avesi Mot. ("Avesi Kushner Decl.") ¶ 10, ECF No. 171-2.) Kushner then adds $370,473.54, representing a 52.1% pro rata share of the General Conditions costs, for a total potential liability of $1,714,100.54. (Avesi Kushner Decl. ¶ 10; Avesi Mot. 4 (indicating a 52.17% pro rata share).)

Kushner further determined that a fair allocation of the damages alleged by HOLA for which Saddleback is responsible is $913,551.00. (Saddleback Mot. 4; Decl. Paul V. Kushner ISO Saddleback Mot. ("Saddleback Kushner Decl.") ¶ 10, ECF

No. 172-2.) Kushner then adds $251,890.20, representing a 35.47% pro rata share of the General Conditions costs, for a total potential liability of $1,165,441.20. (Saddleback Mot. 4; Saddleback Kushner Decl. ¶ 10.)

SG Blocks does not provide the Court with a definition of "General Conditions," nor does it explain the nature of the claimed General Conditions in this case. In reviewing the charts SG Blocks submitted in support of its Motions, the Court found no further detail about the nature of the General Conditions costs SG Blocks claims, such as an itemized list of the components of the expense or a declaration describing the nature of the expense. Moreover, SG Blocks provides no citations to any contractual provisions or case law supporting its assertion that Avesi or Saddleback should be required to provide equitable indemnity or contribution for costs arising from General Conditions, either as a general rule or under the facts of this case.

    2. *Evidentiary Problems with SG Blocks' Evidence*

Second, there are problems with the key evidence SG Blocks submits in support of its Motions. As a threshold issue, it appears SG Blocks submitted an unintended, incorrect document in connection with the Saddleback Motion. In the Kushner Declaration accompanying the Saddleback Motion, Kushner states that Exhibit G is a "spreadsheet which allocates HOLA's incurred repair costs to the various Subcontractors which are Third-Party Defendants in this action, including Saddleback." (Saddleback Kushner Decl. ¶ 9.) Yet, Exhibit G to this declaration appears to be the Avesi allocation spreadsheet. (*Id.* Ex. G, ECF No. 172-2.) It is the exact same spreadsheet SG Blocks attached in support of the Avesi Motion; it bears an "Avesi Construction" headline, and it contains a column for "Avesi Construction" and none for Saddleback. (*Id.*) This chart is the key chart purporting to support damages against Saddleback, yet the chart makes no mention of Saddleback. The failure to submit the correct evidence is grounds for denying the Saddleback Motion.

Beyond this obvious clerical error, there is a foundational problem with all the material evidence SG Blocks submits. The key evidence at issue in both Motions is:

- Exhibit C to each Motion's Kushner Declaration. Exhibit C is a spreadsheet entitled "Owner Incurred Repair-Replacement Costs." Kushner asserts these costs were incurred by HOLA to correct construction deficiencies and defects at the subject project. (*See* Avesi Kushner Decl. ¶ 7; Saddleback Kushner Decl. ¶ 7.)
- Exhibit D to the Avesi Motion's Kushner Declaration. Exhibit D is purportedly the subcontract between SG Blocks and Avesi. (*See* Avesi Kushner Decl. ¶ 8.)
- Exhibit F to the Saddleback Motion's Kushner Declaration. Exhibit F is purportedly the subcontract between SG Blocks and Saddleback. (*See* Saddleback Kushner Decl. ¶ 8.)
- Exhibit G to the Avesi Motion's Kushner Declaration. Exhibit G is a spreadsheet entitled "Owner Incurred Repair-Replacement Costs / Allocation Spreadsheet—Avesi Construction." (Avesi Kushner Decl., Ex. G, ECF No. 171-2.)

Evidence submitted to the Court must be admissible. *See* Fed. R. Evid. 1101. "Authentication is a special aspect of relevancy concerned with establishing the genuineness of evidence." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 n.7 (9th Cir. 2002). It is a "condition precedent to admissibility" which is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* at 773 (citing Fed. R. Evid. 901(a)). Here, all four of the foregoing Exhibits fail the authentication requirement.

a. Exhibits C and G

First, Exhibits C and G are exhibits purporting to contain the dollar amounts supporting SG Blocks' direct liability to HOLA and Avesi's and Saddleback's resulting liability in indemnity to SG Blocks. Kushner introduces Exhibit C to the Court by stating that he "is informed and believe[s] that Exhibit C summarizes the

costs actually incurred by HOLA to correct construction deficiencies and defects at the subject project." (*See, e.g.*, Avesi Kushner Decl. ¶ 7.) However, the nature of some of the information on Exhibit C is unclear; for example, it is unclear whether the "Subcontractor" column lists the subcontractor who *caused* the defect, or the subcontractor that HOLA hired to execute the change order and *remedy* the defect.

As for Exhibit G, Kushner introduces this Exhibit as "a spreadsheet" without providing further information about the source of the spreadsheet. (*See id.* ¶ 9.) He indicates in passing that the dollar amounts reflected on the spreadsheet. are "HOLA's incurred repair costs to the various Subcontractors" without explaining how he obtained those figures. (*See id.* ¶ 9.) Because Kushner does not specify the source of the spreadsheet, the Court cannot determine the origin of the numbers on the spreadsheet. As a result, the Court cannot determine if the spreadsheet provides meaningful proof of damages.

Moreover, with regards to both Exhibits C and G, it does not appear that Kushner, a retained consultant and potential expert witness, has the personal knowledge required to verify that these exhibits (1) are true and correct copies of SG Blocks' business records; and/or (2) that the key dollar amounts on the Exhibits are accurate based on SG Blocks' financial records.

b. <u>Exhibits D and F</u>

Exhibits D and F are the purported subcontracts and, like Exhibits C and G, are improperly authenticated. Kushner does not appear to have any association with SG Blocks beyond this lawsuit, and therefore appears to lack the personal knowledge required to state that Exhibits D and F are indeed contracts that SG Blocks executed with Avesi and Saddleback, respectively. Moreover, Kushner lacks the knowledge required to verify that these contracts were in effect and operative at the time of the events alleged in the First Amended Consolidated Complaint and the First Amended Third Party Complaint. The contracts are therefore unauthenticated and cannot provide proof of damages.

That SG Blocks may have attached one or more of these subcontracts to a prior pleading does not cure the foregoing deficiencies. (See FATPC Ex. C ("Avesi Subcontract"), ECF No. 79-3; *id.* Ex. J ("Saddleback Proposal"), ECF No. 79-10.) If SG Blocks intends to point to a previously filed exhibit in support of its Motions for Default Judgment, SG Blocks should provide a citation to that exhibit in a memorandum of points and authorities, signed by counsel of record for SG Blocks. Fed. R. Civ. P. 11(a); C.D. Cal. L.R. 11-1.

3.  *Expert's Methodology Unexplained and Unsound*

SG Blocks submits the expert testimony of Kushner in order to establish that Avesi and Saddleback are responsible for $913,551 and $1,343,627, respectively, of the $3.28 million in repair costs SG Blocks incurred in total.

"A party offering expert testimony must establish that the testimony satisfies Rule 702 of the Federal Rules of Evidence." *BBK Tobacco & Foods LLP v. Central Coast Agriculture Inc.*, 615 F. Supp. 3d 982, 999 (D. Ariz. 2022). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) ("[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.").

"As gatekeepers, trial judges make a preliminary assessment as to whether expert testimony is admissible." *BBK Tobacco*, 615 F. Supp. 3d at 999. This inquiry

is "flexible." *Id.* (quoting *Daubert*, 509 U.S. at 594.) The Court's focus should remain "solely on principles and methodology, not on the conclusions that they generate." 509 U.S. at 593.

Applying these principles, Kushner's declarations are insufficient. Beginning with the Saddleback Motion's declaration, and setting aside the fact that SG Blocks appears to have attached the wrong document as Exhibit G, Kushner declares the following about how Exhibit G was prepared:

> Exhibit G is a true and correct copy of a spreadsheet which allocates HOLA's incurred repair costs to the various Subcontractors which are Third-Party Defendants in this action, including Saddleback. Exhibit G allocates the Owner Incurred Repair Costs (Exhibit C) to the the [sic] roofing subcontractor's scope of work for Saddleback.

(Saddleback Kushner Decl. ¶ 9; *see also* Avesi Kushner Decl. ¶ 9 (describing Exhibit G in similar terms with respect to Avesi).)

Based on that Exhibit, along with Kushner's own review of other related documents, Kushner opines "that $913,551.00 represents a fair and reasonable allocation of HOLA's costs to repair attributable to the various scopes of work Saddleback Roofing [sic]." (Saddleback Kushner Decl. ¶ 10; *see also* Avesi Kushner Decl. ¶ 10 (asserting a similar opinion with respect to Avesi "pursuant to the Avesi Subcontract").)

These statements constitute the entirety of Kushner's description of his principles and methods and how he applied them to the case. The statements are entirely insufficient to allow the Court to conclude that (1) Kushner is employing reliable principles and methods and that (2) Kushner has properly applied those principles and methods to the case. At minimum, if Exhibit G is to constitute an admissible expert opinion, Kushner must coherently explain to the Court how the figures in Exhibit C lead to the conclusions embodied in Exhibit G.

More fundamentally, the Court is unconvinced that SG Blocks' allegations and evidence support assigning indemnity solely according to the scope of work as set

forth in the subcontracts. As discussed, it appears that SG Blocks' only viable claims are equitable claims. (*See supra* Part IV.B.1.) Given that the viable claims are equitable and not contractual in nature, it appears that sufficient proof of damages would be based not merely on an academic analysis of the subcontracts but instead on fair, evidence-backed estimates of the additional costs to complete the project that Avesi or Saddleback actually caused. These costs would, in turn, be based on the work each entity actually did on the Project, or the work each entity agreed to do but did not do. To obtain default judgment, SG Blocks must articulate established principles for determining damages on equitable indemnity and contribution claims, and it must submit evidence (expert or otherwise) that demonstrates damages according to those principles. SG Blocks does not do so in this instance, and the Court denies the Motions on this basis.

### D.   Further Instructions

The Court herein provides SG Blocks with an opportunity to amend its Motions and address the deficiencies discussed above. In so doing, the Court provides SG Blocks with additional orders regarding the form and service of the Motion, as provided below.

### V.   CONCLUSION

For the reasons discussed above, the Court **DENIES** SG Blocks' Motions for Default Judgment. (ECF Nos. 171, 172.) By no later than **May 30, 2023**, SG Blocks shall file an Amended Motion for Default Judgment. Failure to do so may result in dismissal of the case for lack of prosecution.

The Court further **ORDERS** as follows:

- SG Blocks shall file <u>one single amended default judgment motion</u> covering both defaulting Defendants. SG Blocks shall include a word count certificate of compliance pursuant to Central District of California Local Rule 11-6.
- SG Blocks shall provide the Court with a courtesy copy of the amended motion and supporting materials.

- SG Blocks shall serve the amended motion on (1) Avesi and Saddleback in accordance with Federal Rule of Civil Procedure 4(h) and (2) Saddleback's putative insurance adjuster by postal mail and email. SG Blocks shall file a Proof of Service of the amended motion no later than <u>seven (7) days</u> after the date it files the amended motion.

**IT IS SO ORDERED.**

May 8, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**